**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **CAROL SCOTT, et al.,** | ) | **CASE NO.  4:05 CV 0076** |
| | ) | |
| **Plaintiffs,** | ) | **JUDGE PETER C. ECONOMUS** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **ALLSTATE INDEMNITY COMPANY,** | ) ) | **MEMORANDUM OPINION AND ORDER** |
| | ) | |
| **Defendant.** | ) | |

This matter is before the Court upon Defendant Allstate Indemnity Company's Motion for Summary Judgment  (Dkt. #57).

**I. FACTS**

In the spring of 2004, Plaintiffs, Derrick Scott and Carol Scott, renewed a homeowners insurance policy (the "Insurance Contract") with Defendant, Allstate Indemnity Corp. ("Allstate") for a policy period beginning March 21, 2004 with no fixed date of expiration.  (Dkt. #13, Ex. A, ("Insurance Policy")).  On April 16, 2004 a fire occurred at Plaintiffs' house (the "Fire"), severely damaging the house and its contents.

(Dkt. #12, Ex. 1 ("Amended Complaint")). Derrick Scott reported the Fire to Allstate on April 19, 2004. (Dkt. #60, Affidavit of Victoria L. Hoenigman ("Hoenigman Aff.") ¶ 5). Allstate subsequently commenced a full investigation of the Fire. (Hoenigman Aff. ¶¶ 6–12). As part of the investigation, Allstate employee, Charles Stemnock, inspected the house and fire damage on April 19; Allstate hired a certified fire investigator, Jason Wallace of SEA, Ltd., to conduct a fire investigation at the house and to render an opinion as to the origin and cause of the Fire; and Allstate retained independent insurance adjuster David A. Chipps to assist in investigating the Fire. (Id.). In addition, on July 9, counsel for Allstate examined Derrick Scott under oath. (Id. ¶ 11).

During his Examination Under Oath ("EUO"), Derrick Scott stated that on the day of the Fire he noticed a "wet spot" on the floor of his garage. (Dkt. #57, Ex.1 Examination Under Oath of Derrick Scott ("Scott EUO") at 155–56). He determined to investigate the nature of the "wet spot" by lighting it with a match. (Scott EUO at 166–70). When he applied the lit match to the "wet spot" by dropping the match to the floor the liquid ignited and flames shot into the air. (Id. at 171–73). Derrick Scott then tried, unsuccessfully, to prevent the spread of the fire. (Id. at 174).[1]

After evaluating the collected evidence regarding the Fire, Allstate denied Plaintiffs payment and liability for their claim. (Hoenigman Aff. ¶ 13). Allstate informed Plaintiffs

---

[1] Allstate doubts the veracity of these statements made by Derrick Scott. (Dkt. #57 at 2). Allstate argues, however, that even accepting these statements as true, the fire damage is not covered under the Insurance Contract. (Id.). Therefore, for purposes of addressing Allstate's arguments, the Court will accept these statements as true.

of the decision to deny coverage via letter on September 22, 2004. (Hoenigman Aff., Ex. 1).

In December of 2004, Plaintiffs filed a complaint in the Court of Common Pleas of Trumbull County Ohio. (Dkt. #1, Ex. B). Allstate, subsequently, removed the action to this court. (Dkt. #1). On March 4, 2005, the Court granted Plaintiffs leave to file an Amended Complaint. Plaintiffs' Amended Complaint asserts a claim for breach of the Insurance Contract, a claim of bad faith by Allstate in declining Plaintiffs' coverage, and a demand for a declaratory judgment construing the Insurance Contract. (Dkt. #12, Ex. 1 ("Amended Complaint").

## II. STANDARD OF REVIEW

Summary judgment is proper where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56 (c). "Rule 56 (c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In considering such a motion, the court must review all of the evidence in the record. See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587–88 (1986)). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . . The evidence of the

non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); accord Graham-Humphreys v. Memphis Brooks Museum of Art, Inc., 209 F.3d 552, 556-57 n.7 (6th Cir. 2000). The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251-52.

"A party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323 (quoting FED. R. CIV. P. 56 (c)). The movant meets this burden "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." Clayton v. Meijer, Inc., 281 F.3d 605, 609 (6th Cir. 2002) (quoting Celotex, 477 U.S. at 324-25). The non-movant then "must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 250.

"The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989) (quoting Anderson, 477 U.S. at 250). "A mere scintilla of evidence is insufficient; there must be evidence on which the jury could reasonably find for

the [non-movant]." Anderson, 477 U.S. at 250.

## III. LAW AND ANALYSIS

In diversity actions, a federal court applies the forum state's choice-of-law provisions. See Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938); Spence v. Miles Laboratories, Inc., 37 F.3d 1185, 1188 (6th Cir. 1994). Ohio has adopted the Restatement (Second) of Conflict of Laws to determine choice-of-law questions. See Gries Sports Ent., Inc. v. Modell , 15 Ohio St. 3d 284, 473 N.E.2d 807, syllabus (1984). The Restatement presents the following factors as indicative of the appropriate choice-of-law: (a) the place of contracting, (b) the place of negotiation, (c) the place of performance, (d) the location of the subject matter, and (e) the domicile, residence, nationality, place of incorporation, and place of business of the parties. See RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 188 (1971).

The parties concur that Ohio law governs this action as evidenced by their utilization of the laws of the state of Ohio, and the authorities interpreting Ohio law, when addressing the instant motion. Accordingly, the Court shall apply Ohio law to claims at issue.

### A. Breach of the Insurance Contract

In Ohio, insurance contracts are construed as any other written contract. See Hybud Equip. Corp. v. Sphere Drake Ins. Co., Ltd., 64 Ohio St. 3d 657, 597 N.E.2d 1096, 1102 (1992); Gomolka v. State Auto. Mut. Ins., 70 Ohio St.2d 166, 436 N.E.2d 1347, 1347–49 (1982). An insurance contract will only require interpretation if the applicable language

5

is ambiguous—that is, open to more than one interpretation. See Faruque v. Provident Life & Acc. Ins. Co., 31 Ohio St.3d 34, 508 N.E.2d 949, 952 (1987). Because it is typically the insurance carrier that drafts the contract, ambiguous language within an insurance contract must be construed strictly against the insurer and liberally in favor of the insured. See United States Fidelity & Guaranty Co. v. Lightning Rod Mutual Ins. Co., 80 Ohio St.3d 584, 687 N.E.2d 717, 719 (1997); Butche v. Ohio Casualty Ins. Co., 174 Ohio St. 144, 187 N.E.2d 20 (1962). It should be emphasized, however, that provisions are to be strictly construed against the insurer only when they are ambiguous. See GenCorp, Inc. v. American Intern. Underwriters, 178 F.3d 804, 818 (6th Cir. 1999); University of Cincinnati v. Arkwright Mut. Ins. Co., 51 F.3d 1277, 1280 (6th Cir. 1995). And the general rule of liberal construction cannot be used to create an ambiguity where one does not exist. See Karabin v. State Auto. Mut. Ins. Co., 10 Ohio St.3d 163, 462 N.E.2d 403, 406 (1984).

Whether an insurance policy is unambiguous or requires interpretation is a question of law. See Inland Refuse Transfer Co. v. Browning-Ferris Industries, Inc., 15 Ohio St. 3d 321, 474 N.E.2d 271, 272–73 (1984) ("If a contract is clear and unambiguous, then its interpretation is a matter of law and there is no issue of fact to be determined."). If the terms of a policy are clear and unambiguous, a court must enforce the contract as written, giving words used in the contract their plain and ordinary meaning. See Cincinnati Indemn. Co. v. Martin, 85 Ohio St.3d 604, 710 N.E.2d 677, 679 (1999). Likewise, where an exclusionary clause in an insurance contract is unambiguous, Ohio law requires that the plain language of the clause be given effect. See Thomas Noe, Inc. v. Homestead Ins. Co.,

173 F.3d 581 (6th Cir. 1999).

Allstate argues it denied Plaintiffs coverage because the fire damage to their home was not "accidental" and, therefore, was not covered under the Insurance Contract and that, furthermore, coverage for Plaintiffs' insurance claim is expressly excluded under the Insurance Contract. The Insurance Contract provides in relevant part:

> Losses We Cover Under Coverages A and B
>
> We will cover *sudden and accidental* direct physical loss to property described in Coverage A—Dwelling Protection and Coverage B—Other Structures Protection except as limited or excluded in this policy.

(Insurance Policy at 5) (emphasis added). Likewise, Coverage C—Personal Property Protection applies only to sudden and accidental loss to covered property. (Id. at 9).

> We do not cover loss to property described in Coverage A —Dwelling Protection or Coverage B—Other Structures Protection consisting of or caused by:
> …
> 9. Intentional or criminal acts of or at the direction of any insured person, if the loss that occurs:
> a) *may be reasonably expected to result from such acts*; or
> b) is the intended result of such acts.
> This exclusion applies regardless of whether or not the insured person is actually charged with, or convicted of a crime.

(Insurance Policy at 6) (emphasis added). An identical exclusion applies to Coverage C—Personal Property Protection. (Id. at 10–11). Allstate contends the fire damage suffered by Plaintiffs was not accidental because Derrick Scott admits that the fire resulted from his intentional act—i.e., he deliberately applied a lit match to an unidentified liquid—and Derrick Scott reasonably expected a fire to ensue. Additionally, Allstate argues

7

that the property loss suffered by Plaintiffs is excluded under the Insurance Contract because the fire damage was reasonably expected to result from Derrick Scott's acts.

"The term, 'accidental,' as used in an insurance policy means 'an unexpected happening without intention or design.' Its inclusion makes it clear that the insured is not protected against loss resulting from his own intentional and malicious acts." Munchick v. Fidelity & Casualty Co. of New York, 2 Ohio St.2d 303, 209 N.E.2d 167, 170 (1965). Language in an insurance contract is to be understood in its ordinary, usual or popular sense and the word accident, in its simplest and most popular sense, means an unexpected event. See Randolph v. Grange Mut. Cas. Co., 57 Ohio St.2d 25, 385 N.E.2d 1305, 1307 (1979). Accord American Family Ins. Co. v. Wasler, 628 N.W.2d 605, 609–11 (Minn. 2001) (defining an accident as "an unexpected, unforeseen, or undesigned happening or consequence."); Fidelity and Guar. Ins. Underwriters, Inc. v. Allied Realty Co., 384 S.E.2d 613, 615 (Va. 1989) (defining accidental "in the same manner as Black's Law Dictionary, to wit: happen by chance, or unexpectedly; taking place not according to the usual course of things; casual; fortuitous."). See also Terre Haute First Nat. v. Specific Employers Ins. Co., 634 N.E.2d 1336, 1338 (Ind. Ct. App. 1993) ("in the context of insurance coverage, an accident means an unexpected happening without an intention or design."); McCoy v. Coker, 620 S.E.2d 691, 694 (N.C. 2005) (quoting Black's Law Dictionary's to define the term accident in the context of insurance policies as 'an occurrence which is unforeseen, unexpected, extraordinary, either by virtue of the fact that it occurred at all, or because of the extent of the damage.'").

8

The Sixth Circuit has applied the concept of an "unexpected event" to interpretation of an insurance contract under Ohio law; it did so by discussing the term "fortuitous loss." See University of Cincinnati v. Arkwright Mut. Ins. Co., 51 F.3d 1277 (6th Cir. 1995). Arkwright, concerned an insurer who denied coverage to an insured who submitted a claim for damages sustained during the removal of asbestos from a building prior to that building's demolition. Id. at 1277–79. The insured held an all-risk insurance policy that extended protection against "fortuitous loss" to its real and personal property. Id. The court's analysis discussed the concept of a fortuitous loss or a fortuitous event as analogous to the insurance definition of an "accident"—that which happens by chance or unexpectedly. Id. at 1281 ("A fortuitous event is an event occurring by chance without evident causal need or relation or without deliberate intention.") (internal quotations omitted).

The Court emphasized that any analysis of fortuity or accident "involves an examination of whether plaintiff caused and intended the consequences that resulted in its claim for damages." See Arkwright, 51 F.3d at 1282. Using this analysis, the Court found that the insured's losses were neither unanticipated nor unintended. Id. The Court determined that the decision to demolish the building and the consequent decision to remove the asbestos from the building before the demolition were decisions solely in the discretion of the insured. Id. ("It can hardly be argued that the damage to the building brought on by the asbestos removal process was a matter of chance when plaintiff exercised total control over whether and when such damage would occur and possessed discretion to

9

execute its own loss.").

The <u>Arkwright</u> decision elaborated on the policy considerations behind its analysis:

> To allow recovery for an insured such as plaintiff, who undertakes deliberate damage-inducing actions with known consequences, would undermine the function of insurance as the sharing of unpredictable risks of damage. We agree with the district court that plaintiff's losses stemming from its deliberate actions, taken with full awareness of the probable and intended consequences, cannot be considered fortuitous and that the concept of risk that is inherent in all policies of insurance is lacking.

<u>Arkwright</u>, 51 F.3d at 1282 (internal citations omitted).

While the facts of <u>Arkwright</u> are not completely analogous to the instant case, the Sixth Circuit's analysis of "fortuity" is instructive to this Court's application of the term accidental to the instant facts. Accordingly, the Court shall examine whether Plaintiffs caused and intended the consequences that resulted in their claim for damages. <u>See</u> <u>Arkwright</u>, 51 F.3d at 1282. Derrick Scott, the insured Plaintiff, deliberately applied a lit match to an unidentified liquid, a liquid he admits he knew may have been a flammable substance such as gasoline or antifreeze.

> Q [by Counsel for Allstate]. What would the match tell you about what was on the floor?
> A [by Derrick Scott]. Whether it was water or whether it was some other kind of liquid.
> Q. What other kind of liquid would it be if it wasn't water?
> A. I don't know. I didn't check the gas can to see if it had been leaking.
> Q. If it was water, how would you be able to tell if it was water with a match?
> A. Again, water, if you put fire on water it goes out.
> Q. What are the other possibilities it could have been other than water?
> A. I have no idea. It could have been antifreeze….

(Scott EUO at 168). It is, therefore, evident that Derrick Scott engaged in the intentional

10

act of lighting an unknown substance which he could not determine with certainty was not flammable. The decision to test the wet spot using a lit match was a decision solely within Derrick Scott's discretion. See Arkwright, 51 F.3d at 1282. It is also obvious from Derrick Scott's statements that he intended that once the lit match contacted the "wet spot" it would either extinguish or further inflame.

Moreover, Derrick Scott should have reasonably expected a fire to result from his actions. The Insurance Contract excludes intentional acts by the insured if the loss that occurs "may be reasonably expected to result from such acts." (Insurance Policy at 6). Therefore, not only is Plaintiffs' loss not accidental—meaning unexpected or unforseen, but it also is expressly excluded under the Insurance Contract because it was reasonably expected to occur. See also Wight v. Michalko, No. 2004-P-0038, 2005 WL 1009828, *3 (Ohio App. 11 Dist. Apr. 29, 2005). ("the question whether an act is 'intentional' for the purposes of an 'intentional act' exclusion is quite similar to the question whether an act is 'accidental'….").

Plaintiffs argue, however, that Derrick Scott did not intend the extensive fire damage that resulted from his actions and contend that Allstate, in order to demonstrate the property loss was accidental, must prove that Derrick Scott intended the entire loss to the stored possessions in the garage, the garage structure and the house structure. See (Dkt. #83 at 2, 5–7). Plaintiffs appear to argue that Allstate must demonstrate Derrick Scott's subjective

11

intent was to cause substantial fire damage to his property.[2] This argument ignores the plain language of the Insurance Contract's exclusion. The Insurance Contract excludes, in the disjunctive, intentional acts of the insured if the loss that occurs "(a) *may be reasonably expected to result* from such acts; or (b) is the intended result of such acts." (Insurance Policy at 6, 10–11) (emphasis added). The phrase "which may reasonably be expected to result" denotes an objective as opposed to subjective standard of coverage rendering an insured's subjective intent to cause damage irrelevant. See Allstate Ins. Co. v. Roberts, No. CA90-04-075, 1991 WL 40548, *3 (Ohio App. 12 Dist. Mar. 25, 1991). A reasonable person knows that a fire "may be reasonably expected" to spread and cause extensive damage. See Erie Ins. Exch. v. St. Stephen's Episcopal Church, 570 S.E. 2d 763 (N.C.

---

[2] Plaintiffs attempt to compare the instant facts with the case of Physicians Ins. Co. of Ohio v. Swanson, 58 Ohio St.3d 189, 569 N.E.2d 906 (1991). That case involved a teenager who shot his BB gun at a group of teens, striking one boy in the eye. Id. The teenager testified that he did not intend to shoot anyone; he intended, rather, to scare the group by shooting at a sign some distance away. Id. The injured boy then sought to recover under the shooter's parent's insurance policies. Id. The Ohio Supreme Court decided that the insurance covered the boy's injury despite a contractual exclusion for intentional acts. Id. The Court held that "in order to avoid coverage on the basis of an exclusion for expected or intentional injuries, the insurer must demonstrate that the injury itself was *expected or intended*." Id. (emphasis added). First, the relevant exclusion in Swanson did not contain the "may be reasonably expected to result" language of the instant case. See Swanson, 569 N.E.2d at 908 (interpreting the following exclusions: "We will not cover personal injury or property damage caused intentionally"). Second, the facts of the instant case are distinguishable from Swanson. There is an element of the "accidental" in Swanson that is missing in the instant case. Here, Derrick Scott held two expectations when he released the lit match—that the wet spot would ignite or that the lit match would extinguish. Derrick Scott's hope or wish that no fire would ensue or damage his property is not comparable to an intent not to aim a gun directly at a human target. Derrick Scott expected the lit match to contact the wet spot, therefore, he expected the possibility a fire would ensue.

App. 2002) (finding that insurance provision excluding intentional acts applied to 8-year-old child who should have reasonably expected a fire to result and spread from his actions in lighting a robe while standing in an unoccupied office). See also Frankenmuth Mut. Ins. Co. v. Masters, 460 Mich. 105, 595 N.W.2d 832, 839 (Mich. 1999) (finding property loss was not an accident where plaintiff intended to cause only a small, smokey fire, but instead caused a fire resulting in extensive damage to multiple buildings and noting "when an insured's intentional actions create a direct risk of harm, there can be no liability coverage for any resulting damage or injury, despite the lack of an actual intent to damage or injure."). Derrick Scott's act of striking a match to a wet substance that started a fire was deliberate. It is irrelevant that he only intended to test whether a substance is flammable. He expected the possibility of causing a fire, he exposed his property to a direct risk of harm, and it may be reasonably expected that fire damage can result from such actions.[3]

The damage caused by the Fire was not accidental—i.e., unexpected or unforseen, but was the foreseeable result of the insured Plaintiff's intentional conduct. The Court finds that Plaintiffs' loss was not an accident, and moreover, that Plaintiffs' loss is expressly excluded under the Insurance Contract. Allstate, therefore, in denying Plaintiffs coverage

---

[3]Plaintiffs make an additional argument that the fire started by Derrick Scott was a "friendly fire" which became a "hostile fire" for which an insurer must be held liable. See Frings v. Farm Bureau Mutual Fire Ins. Co., 99 Ohio App. 239, 133 N.E.2d 407 (Ohio App. 2d Dist. 1955); Engel v. Redwood Cnty. Farmers Mut. Ins. Co., 281 N.W.2d 331 (Minn. 1979); Bowes v. N.C. Farm Bureau Mutual Ins., Co., 26 N.C. App. 234, 215 S.E.2d 855 (N.C. App. 1975); Mutual Fire Ins. Agency v. Slater & Gilroy, Inc., 265 S.W.2d 788 (Ky. App. 1954). Plaintiffs' argument is unfounded. The cases cited by Plaintiff are not remotely analogous; each case concerns fires that escaped from malfunctioning furnaces.

13

did not breach the Insurance Contract. Accordingly, Allstate is entitled to judgment on the breach of contract claim.

## B. Bad Faith Claim

There can be no claim for bad faith unless an insurance claim was wrongfully denied. See Zoppo v. Homestead Ins. Co., 71 Ohio St.3d 552, 644 N.E.2d 397 (1994) (citing Staff Builders, Inc. v. Armstrong, 37 Ohio St.3d 298, 303, 525 N.E.2d 783 (1998)) ("[A]n insurer fails to exercise good faith in the processing of a claim of its insured where its refusal to pay the claim is not predicated upon circumstances that furnish *reasonable justification* therefore.") (emphasis added). The Court has concluded that Plaintiffs' Insurance Contract provides no coverage for their loss; therefore, Allstate was more than reasonably justified in denying Plaintiffs' claim. Consequently, Plaintiffs' bad faith claim is unfounded, and Allstate is entitled to judgment on the bad faith claim.

## C. Declaratory Judgment Claim

Plaintiffs ask the Court to "constru[e] the insurance contract and the terms, limitations and conditions contained in the insurance contracts [sic]." (Amended Complaint ¶ 22). Presumably, Plaintiffs are asking the Court to construe the Insurance Contract as supporting their claim for coverage; however, the Court's analysis of the breach of contract claim has concluded that Plaintiffs' property loss is not covered under the Insurance Contract. Accordingly, Plaintiffs' claim for declaratory judgment is dismissed.

## IV. CONCLUSION

For the foregoing reasons, Defendant Allstate Indemnity Company's Motion for

Summary Judgment (Dkt. #57) is **GRANTED**.  Defendant is entitled to judgment on counts 1 and 2 of the Amended Complaint; count 3 is dismissed.

**IT IS SO ORDERED.**

                                         /s/ *Peter C. Economus* – **02/28/06**
                                         **PETER C. ECONOMUS**
                                         **UNITED STATES DISTRICT JUDGE**